UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| FIRST NATIONAL BANK OF MANCHESTER, | ) ) ) |
| Appellant, | ) Civil No. 14-184-GFVT ) ) |
| V. | ) **MEMORANDUM OPINION** |
| PAUL EDWARD ELZA and JUDITH ELAINE ELZA, | ) **&** ) **ORDER** ) ) |
| Appellees. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Kentucky. Creditor First National Bank of Manchester challenges the bankruptcy court's Order of May 22, 2014, which granted the Debtors' motion to avoid two judicial liens held by First National, pursuant to 11 U.S.C. § 522(f). For the reasons set forth below, the Court will AFFIRM the bankruptcy court's Order.

I

Debtors Paul and Judith Elza filed a voluntary petition for Chapter 7 bankruptcy on May 10, 2012. [*In re Elza*, Bankr. Pet. No. 12-60612, Bankr. R. 1]. Pursuant to 11 U.S.C. § 522(f), they moved to avoid several judicial liens, including two held by First National. [Bankr. R. 41]. First National objected. [Bankr. R. 42]. The nature of those liens is the subject of this appeal.

On June 12, 2009, Elza Construction, LLC, a Kentucky limited liability company solely owned by Paul Elza, obtained a second mortgage on commercial property located on the KY-192 Bypass in Laurel County from First National in the principal amount of $203,569.50. [Mortgage, Bankr. R., Claims Register 5-1, Pts. 4-5; Promissory Note, *id.*, Pt. 1 at 3]. The terms

of that loan included personal guaranties on the debt from Paul and Judith Elza. [*Id.* at 5-1, Pts. 2, 3]. The Elzas' residential property, also located in Laurel County, was not given to secure this debt. [*See* Mortgage, Bankr. R., Claims Register 5-1, Pts. 4-5]. Some time later, Elza Construction defaulted, and First National joined the senior mortgagee in instituting a foreclosure action on the commercial property in Laurel Circuit Court. The state court entered a foreclosure judgment and order of sale. [Ex. State Court Judgment, R. 7-1]. It also ordered that Elza Construction, Paul Elza, and Judith Elza were jointly and severally liable for the balance owed to the senior mortgagee. [*See id.* at ¶¶ 14, 21, 25]. After the judicial sale of the property and distribution to the senior mortgage holder, a deficiency of $209,486.62 remained owing to First National. On April 25, 2011, First National filed two judgment liens on the Elzas' residential property, claiming the full $209,486.62 deficiency, plus interest, against both Paul and Judith. [Ex. Judgment Liens, R. 7-2].

After a hearing on May 21, 2014, [Bankr. R. 47], the Bankruptcy Court granted the Debtor's motion to avoid these liens. [Order, Bankr. R. 48 at ¶ 7]. First National filed a motion to alter, amend, or vacate that order, [Bankr. R. 49], which the Court denied, [Bankr. R. 54]. This appeal followed.

II

"This Court reviews de novo questions of statutory interpretation, statutory application, and a bankruptcy court's conclusions of law." *Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010) (citing *In re Ruehle,* 307 B.R. 28, 31 (B.A.P. 6th Cir. 2004)). "De novo review requires [this court] to review questions of law independent of the bankruptcy court's determination." *First Union Mort. Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P.

6th Cir. 1998).

This case presents a question of statutory interpretation that has not yet been addressed by the Sixth Circuit, the Sixth Circuit Bankruptcy Appellate Panel, or bankruptcy courts sitting in Kentucky: whether a mortgage foreclosure deficiency judgment lien is a "judgment arising out of a mortgage foreclosure" that is excluded from avoidance under § 522(f)(2)(C). Section 522 of the Bankruptcy Code exempts certain property from the bankruptcy estate. 11 U.S.C. § 522 (2012). Section 522(f) addresses the avoidance of certain liens and provides, in relevant part:

> (1) . . . [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
> (A) a judicial lien, . . .
>
> . . . .
>
> (2)    (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
> (B) In the case of a property subject to more than one lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.
>
> (C) *This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.*

*Id*. (emphasis added). Section 522(f)(1) sets forth the general rule of avoidance. Section 522(f)(2) then provides some explanation on that rule: Sub-paragraph (A) provides a formula "to be utilized in determining whether a particular lien impairs an exemption." *In re Hart*, 282 B.R. 70, 73 (B.A.P. 1st Cir. 2002), *aff'd* 328 F.3d 45 (1st Cir. 2003). In essence, this Section permits

3

a debtor to avoid certain judicial liens to the extent that the value of the lien, all other liens on the property, and the claimed exemption exceed the value of the debtor's interest in the property. *See* § 522(f)(1)-(2)(A).

First National does not necessarily dispute that its two deficiency judgment liens are "judicial liens" within the meaning of this section. *See* 11 U.S.C. § 101(36) (defining "judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding"). Nor does it necessarily dispute that the application of § 522(f)(1) and (2)(A) would generally require avoidance of its two deficiency liens. Rather, First National's argument is premised solely on § 522(f)(2)(C): It contends that the deficiency judgments obtained in connection with its foreclosure on the Elzas' business property "aris[e] out of a mortgage foreclosure" under § 522(f)(2)(C) and are therefore unavoidable for the Elzas in their residential Chapter 7 bankruptcy.

A split in authority has emerged on this issue. The overwhelming majority of courts hold that mortgage deficiency liens are not "judgments [that] aris[e] out of a mortgage foreclosure" and are therefore avoidable under § 522(f). *E.g.*, *In re Hart*, 328 F.3d 45 (1st Cir. 2003); *In re Maxwell*, 2010 Bankr. LEXIS 4082; 2010 WL 4736206 (Bankr. E.D. Tenn. Nov. 16, 2010); *In re Burns*, 437 B.R. 246 (Bankr. N.D. Ohio 2010); *In re Linane*, 291 B.R. 457 (Bankr. N.D. Ill. 2003); *In re Carson*, 274 B.R. 577 (Bankr. D. Conn. 2002); *In re Smith*, 270 B.R. 557 (Bankr. W.D.N.Y. 2001). First National points to two bankruptcy court decisions that reach the opposite conclusion and hold that § 522(f)(C) precludes avoidance of such liens. *In re Criscuolo*, 386 B.R. 389 (Bankr. D. Conn. 2008); *In re Vincent*, 260 B.R. 617 (Bankr. D. Conn. 2000). Two grounds support these decisions: Some courts turn to substantive state foreclosure law to

determine whether a deficiency judgment lien indeed "arises out of" a mortgage foreclosure judgment in their respective states. Others, led by the First Circuit and the First Circuit Bankruptcy Appellate Panel, find the language and structure of § 522(f) "sufficiently clear" to resolve the issue and therefore do not resort to state law. Many, including two bankruptcy courts within this circuit, rely on both rationales.

The Sixth Circuit has made clear that statutory interpretation of a Bankruptcy Code provision begins with the "language of the statute itself," *Tucker*, 621 F.3d at 463, so the First Circuit's statutory analysis in *In re Hart*, 328 F.3d 45 (1st Cir. 2003), is a useful place to start. *See also In re Hart*, 282 B.R. 70 (B.A.P. 1st Cir. 2002), *aff'd* 328 F.3d 45 (1st Cir. 2003) (hereinafter *Hart B.A.P.*). In that case, the bank had previously foreclosed on the debtors' real property located in Maine and had obtained a deficiency judgment. The bank then domesticated that judgment in Massachusetts, where the debtors owned another residential property, and recorded a deficiency lien against that property. When the debtors filed for bankruptcy in Massachusetts, the bank argued that its mortgage deficiency lien was unavoidable pursuant to § 522(f)(2)(C).

After scrutinizing the language and structure of § 522(f), the First Circuit and First Circuit Bankruptcy Appellate Panel in *Hart* determined that the statute was "sufficiently clear" that mortgage deficiency liens are avoidable despite § 522(f)(2)(C). First, the court clarified the relevant internal references: § 522(f) is a "subsection;" § 522(f)(2) is a "paragraph;" and § 522(f)(2)(C) is a "subparagraph." *Hart B.A.P.*, 282 B.R. at 74. With this taxonomy in mind, the court determined that the phrase "this paragraph" in § 522(f)(2)(C) is a reference to § 522(f)(2). In turn, the formula in § 522(f)(2)(A) applies to "this subsection," meaning the entirety of §

522(f). Under the general rule in § 522(f)(1), "the only liens which may be avoided under § 522(f) are 'judicial liens.'" *Hart B.A.P.*, 282 B.R. at 76 (internal quotation marks added). Consequently, the court explained, the formula in the formula set forth in § 522(f)(2)(A) is to be applied to all "judicial liens," *Hart*, 328 F.3d at 48 – and not to the "judgments" in § 522(f)(2)(C).

This structure also convinced the *Hart* Court that § 522(f)(2)(C) was not intended as an exception, but as a clarification about the scope of avoidability. The phrase "this paragraph" in § 522(f)(2)(C) is a reference to § 522(f)(2) – not the entirety of § 522(f). That is, it was not drafted as an exception to the general rule stated in § 522(f)(1), or, for that matter, § 522(f). *See id.* at 77. The First Circuit's Bankruptcy Appellate Panel was persuaded that this omission was intentional:

> If Congress had intended to exclude a judgment arising out of a mortgage foreclosure from avoidance under § 522(f), it easily could have accomplished that by putting an exclusion in § 522(f)(1), as it did for judicial liens arising out of alimony, maintenance and support, or by providing in § 522(f)(2)(C) that this subsection shall not apply with respect to a judgment arising out of a mortgage foreclosure. However, it did neither, and we must presume it acted intentionally.

*Hart B.A.P.*, 282 B.R. at 75 (citing *Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438 (2002); *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)).

This distinction, the First Circuit emphasized, was also borne out in § 522(f)'s terminology. Congress used the term "lien" throughout § 522(f), but chose to use the term "judgment" in § 522(f)(2)(C). *Hart*, 328 F.3d at 49. In fact, "judgment" is not used anywhere else in the section. "Lien" and "judicial lien" are defined terms in the Code. *See* 11 U.S.C. § 101(36)-(37). "Judgment" is not defined in the Code, but "generally means '[a] court's final determination of the rights and obligations of the parties in a case.'" *Hart B.A.P.*, 282 B.R. at 76

6

(quoting Black's Law Dictionary 846 (7th ed. 1999)). The court emphasized that these two terms carry distinct meanings. For instance, "[w]hile judicial liens arise out of judgments, not all judgments result in judicial liens." *Hart B.A.P.*, 282 B.R. at 76. Congress' word choice therefore suggested that the "judgment" in § 522(f)(2)(C) refers to something other than a "lien."

In light of the structure and terminology chosen in this section, the First Circuit concluded that the plain language of § 522(f) "does not allow for the avoidance of 'judgments'; rather it allows for avoidance of judicial liens which impair exemptions." *Hart B.A.P.*, 282 B.R. at 76 (internal quotation marks added). Because the "judgments" referenced in § 522(f)(2)(C) were never within the scope of the "judicial liens" covered § 522(f) in the first place, subparagraph (f)(2)(C) could not have been intended as an exception to the general rule of avoidance. Rather, the purpose of the clause was simply to "clarify that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien which may be avoided." *Id.* at 49. Thus, "while the subject judicial lien was obtained to enforce the mortgage foreclosure judgment, that does not change its essential nature as a lien, nor does its mitigate its susceptibility to avoidance under [§ 522(f)]." *Hart B.A.P.*, 282 B.R. at 76. As the First Circuit's Bankruptcy Appellate Panel put it:

> [W]hen Congress used the specific terms it did in enacting subparagraph § 522(f)(2)(C), it was contrasting mortgage foreclosure judgments from the liens which are avoidable under § 522(f). In other words, Congress was not creating an exclusion, it was providing clarification. *Congress was making clear that the entry of a foreclosure judgment, which is essentially an order of sale, does not convert the underlying consensual mortgage into a judicial lien which may be avoided. Rather, a deficiency judgment—whether it arises in a foreclosure action as in Maine or in a separate action as in Massachusetts—is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f).*

*Hart B.A.P.*, 282 B.R. at 77 (emphasis added). Because the statute was sufficiently clear on its face, there was no need to resort to state foreclosure law to interpret the statute. For the *Hart* Court, deficiency judgment liens are subject to avoidance under § 522(f), regardless of the nature of the underlying state foreclosure process.

Other courts have resolved the question by considering the nature of a mortgage deficiency lien under state foreclosure law. In *In re Smith*, 270 B.R. 557, 561 (W.D.N.Y. 2001), the court explained that, in general, deficiency judgments and mortgage foreclosure judgments have distinct legal characteristics under common law: "A judgment of foreclosure and sale arises out of a foreclosure, as an equitable suit . . . . In contrast, a deficiency judgment is a legal remedy which, by statute, is allowed as a relief that is incidental to the foreclosure. Being otherwise distinct at common law from the foreclosure process, a deficiency judgment arises from rights of legal origin and not from a foreclosure in equity." *In re Smith*, 270 B.R. 557, 561 (Bankr. W.D.N.Y. 2001). This common law distinction is still present in New York's modern foreclosure laws, where, "simultaneously with the making of a motion for an order confirming the sale," a creditor may "make a motion in the action for leave to enter a deficiency judgment . . . ." *Id.* at 560 (citing N.Y. Real Prop. Acts. Law § 1371(2)). Thus, "although a deficiency judgment may arise out of the [New York] foreclosure proceeding, it cannot be said to arise out of the foreclosure itself." *Id.* at 562. Presuming that Congress "was particular in its selection of words" for this statute, the court reasoned that the "judgment arising out of a mortgage foreclosure" referred to in § 522(f)(2)(C) meant the equitable judgment of foreclosure and sale – not the legal remedy of a deficiency judgment. *Id.* at 561.

8

Some of these courts have gone further, looking to the specific procedural mechanisms of the state in which they sit. *See, e.g.*, *In re Phillips*, 439 B.R. 892 (Bankr. N.D. Ala. 2010) (noting that in Alabama, where a creditor generally pursues an extra-judicial power of sale foreclosure, there is no formal "judgment" of foreclosure, so whether the creditor files an action for a deficiency before or after the power of sale foreclosure, "the resulting [deficiency] judgment is not part of the foreclosure process under Alabama law"); *In re McMorris*, 436 B.R. 359, 363 (Bankr. M.D. La. 2010) (explaining that although a foreclosure under Louisiana law "culminates in a sheriff's sale of the mortgaged property, . . . it does not result in a money judgment against the borrower," and the creditor must initiate a separate action to obtain a deficiency judgment, which is "merely incidental to the mortgage foreclosure").

Two bankruptcy courts within this circuit have considered this issue, and both turned – at least in part – to state foreclosure law. In *In re Burns*, 437 B.R. 246 (Bankr. N.D. Ohio 2010), the court was persuaded by both the statutory analysis in *Hart* and the remedy-based distinction drawn in *Smith*. *Id.* at 252. It pointed out that Ohio courts had recognized that a judgment on a promissory note evidencing the debt secured by a mortgage and a judgment of foreclosure on the mortgage "constitute two separate causes of action, one legal and one equitable." *Id.* (citing *Metropolitan Life Ins. v. Triskett Ill., Inc.*, 646 N.E.2d 528 (Ohio Ct. App. 1994)). The court reasoned that a deficiency judgment lien was simply "a complementary remedy that arises out of the underlying obligation, not out of a mortgage foreclosure." *Id.* at 253. The court also found the statutory analysis in *Hart* – particularly the intentional and solitary use of the word "judgment" instead of "lien" in § 522(f)(2)(C) – to be persuasive. *Id.* It concluded that the mortgage deficiency judgment lien was avoidable.

9

The bankruptcy court in *In re Maxwell*, No. 09-35713, 2010 WL 4736206 (Bankr. E.D. Tenn. Nov. 16, 2010), took a similar approach. Agreeing with the reasoning in *Hart* and *Burns*, among other cases, it held that:

> . . . the purpose of § 522(f)(2)(C) was to remove from the application of § 522(f) any judgment for a foreclosure in states requiring judicial foreclosures or wherein the deficiency judgment is a portion of the foreclosure judgment and not a separate action to collect a deficiency balance on a previously secured but, post-foreclosure unsecured, debt.

*Id.* at *6. It also turned to state foreclosure law. Since, in Tennessee, a foreclosure action is wholly separate from an action seeking judgment for a deficiency, it was clear to the court that the Tennessee deficiency judgment lien did not "arise out of" the mortgage foreclosure judgment for purposes of § 522(f)(2)(C). *Id.* at *7.

By contrast, two decisions cited by First National from the Bankruptcy Court for the District of Connecticut conclude that deficiency judgment liens *do* "arise out of" mortgage foreclosure judgments and are therefore unavoidable under § 522(f). In *Vincent*, the court rejected the Debtor's argument that § 522(f)(2)(C) was meant to dispel the notion that an otherwise unavoidable mortgage foreclosure judgment could be "transmuted" into an avoidable judicial lien. *Vincent*, 260 B.R. at 621. It concluded that the deficiency lien "arose out of" the foreclosure judgment and was therefore unavoidable under § 522(f)(2)(C). The broad phrase "arising out of," the court emphasized, "more naturally suggest[ed] the mechanics of a Connecticut deficiency judgment," in which a deficiency judgment is "pursued by motion within the foreclosure action." *Id.* at 622.

*In re Criscuolo*, decided after *Hart*, expanded on the logic in *Vincent*. 386 B.R. 389. First, the *Criscuolo* Court disagreed with *Hart*'s conclusion that the statute was sufficiently clear on its face. It agreed with the First Circuit that the phrase "*this paragraph* shall not apply with

10

respect to a judgment arising out of a mortgage foreclosure" refers only to § 522(f)(2) – not the entire subsection of § 522(f). For the *Criscuolo* Court, however, this meant that mortgage foreclosure judgments were excluded from the formula in § 522(f)(2)(A), but were not excluded from the general rule of avoidability in § 522(f)(1). The court found this produced an "absurd result": mortgage foreclosure-related property interests were "technically" avoidable under the general rule in § 522(f)(1), but no analytical standards, such as the formula in § 522(f)(2)(A), governed their application. *Id.* at 394.

The *Criscuolo* Court therefore identified two potential legislative purposes behind § 522(f)(2)(C), which it inferred from "the broader fabric of bankruptcy legislation." *Id.* at 392. The court rejected the *Hart* Court's conclusion that the clause was meant to clarify that a judgment of foreclosure does not "transmute" an otherwise unavoidable mortgage foreclosure judgment into an avoidable judicial lien, because "Congress has never publicly expressed a concern" on this point. *Id.* at 395. It surmised that the "most likely" purpose of the clause was to further the broader Bankruptcy Code policy of "encourag[ing] and sustain[ing] a flow of affordable capital into the real estate lending market." *Id.* (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993) (Stevens, J., concurring); *Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 245-46 (5th Cir. 1984)).

The Court finds the First Circuit's statutory analysis persuasive and agrees that the plain language and structure of § 522(f) readily distinguish a mortgage foreclosure "judgment" from a "judicial lien" for the deficiency that results from a foreclosure. *See Hart B.A.P.*, 282 B.R. at 76. The distinct terminology used in this section is particularly compelling: Congress chose the word "judgment" for § 522(f)(2)(C) alone and used the defined term "judicial lien" throughout the rest

of the subsection. *E.g.*, *Hart*, 328 F.3d at 49; *Burns*, 437 B.R. at 253. The rule itself provides that, aside from a handful of nonpossessory, non-purchase-money security interests, "judicial liens" – not "judgments" – are the only avoidable debts under § 522(f). § 522(f)(1).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *N. Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 691 F.3d 735, 741 (6th Cir. 2012) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation marks omitted). The Court must presume that Congress intentionally used these terms in order to "contrast[] mortgage foreclosure judgments from the liens which are avoidable under § 522(f)." *Hart B.A.P.*, 282 B.R. at 77. Indeed, as the First Circuit's Bankruptcy Appellate Panel pointed out, Congress would have used the word "lien" if it had intended to exclude mortgage deficiency judgment liens from avoidability. *Id.* Significantly, *Criscuolo* and *Vincent*, relied upon by First National, did not even mention this highly-relevant distinction in terms.

The plain language of Section 522(f)(2)(C), then, simply provides that "mortgage foreclosure judgments" are not and do not become "judicial liens" subject to avoidance under § 522. *E.g.*, *Hart*, 328 F.3d at 49; *Burns*, 437 B.R. at 253. *Accord* 4 Collier on Bankruptcy ¶ 522.11[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("This provision was intended to clarify that a court judgment effectuating a mortgage foreclosure, such as an order authorizing a sale of mortgaged property under a state judicial foreclosure procedure, may not be avoided."). This reading is by far the most logical explanation for § 522(f)(2)(C). As one bankruptcy court has explained:

12

> In this Court's opinion, the obvious purpose behind § 522(f)(2)(C) is to prohibit debtors from avoiding judgments entered during judicial foreclosure proceedings, but before the actual foreclosure sale, and thereby avoid the mortgage-debt as established by the judgment to the extent of the debtor's homestead exemption. If judgments of foreclosure and similar decrees could be avoided, then in states allowing large homestead exemptions a substantial portion, if not all of the mortgage-debt could be avoided leaving the happy chapter 7 debtor with not only a financial fresh start after discharge, but also with a greatly reduced or totally avoided home mortgage. Such would be an absurd result and clearly not one intended by Congress.

*In re Phillips*, 439 B.R. at 896-97 (Bankr. N.D. Ala. 2010). Indeed, and perhaps most persuasively, to hold otherwise would create an incongruous result: it would provide that "holders of judgment liens arising from mortgage foreclosures on non-exempt property [are entitled to] greater rights than other holders of judgment liens on the exempted property." *In re Carson*, 274 B.R. at 580.

Though the legislative history on this provision is scarce, *see Hart*, 328 F.3d at 49, this reading also comports with the fact that the "primary purpose of § 522(f) [is] to benefit debtors," *Carson*, 274 B.R. at 580, and the overarching goal of bankruptcy is to provide a "fresh start." *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citations and internal quotation marks omitted) ("[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt[,] . . . [though] the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'").

First National relies on *Criscuolo*, which rejected the "clarification" purpose explained in *Hart* and determined that the "most likely" purpose of the clause was to promote the "flow of affordable capital into the real estate lending market." 386 B.R. at 395 (citing *Nobelman*, 508

U.S. at 332 (Stevens, J., concurring) ("Favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." (citing with approval *Grubbs*, 730 F.2d at 245-46))). The *Burns* Court, however, persuasively distinguished *Criscuolo* by pointing out that the authorities it relied on for this notion are inapposite in this context. *Burns*, 437 B.R. at 252. *Grubbs* stands for the proposition that Congress intended to provide favorable treatment to creditors holding a claim secured only by the debtor's principal residential real property. *Id.* (quoting *Grubbs*, 730 F.2d at 246 ("[T]he Senate receded from its position that no 'modification' was to be permitted of *any* mortgage secured by real estate")). The mortgage deficiency judgment liens at issue in these cases, however, relate to the foreclosure of "*non*exempt property, i.e. property that is *not* the debtor's residence." *Id*. at 252 (emphasis added). The legislative history relied upon in *Criscuolo*, then, does not support the notion that creditors holding "judgment liens from mortgage foreclosures on *non*exempt property" – the liens at issue in these cases – are entitled to any greater protection than other lienholders. *Id.*

In an attempt to distinguish *Maxwell* and *Burns*, First National also argues that Kentucky's foreclosure process is distinct from that in Tennessee or Ohio. Since Kentucky law permits a personal judgment of deficiency to be entered together with a judgment of foreclosure and order of sale, *see* Ky. Rev. Stat. 426.005(1), First National argues that a Kentucky deficiency judgment lien "arises out of" a foreclosure judgment. The Court, however, agrees with the First Circuit that application of state foreclosure law is unnecessary and inappropriate since this statute is sufficiently clear. *Hart*, 328 F.3d at 48; *see also Carson*, 273 B.R. at 580 ("The court considers it counterintuitive to hold that whether a debtor can avoid a judgment lien based upon a mortgage-deficiency judgment depends wholly upon the particular foreclosure system that a state

14

employs."). Section 522(f) is sufficiently clear that a deficiency judgment – regardless of the nuances and particularities of state foreclosure law – "is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f)." *Hart B.A.P.*, 282 B.R. at 77. First National's deficiency judgment liens are therefore not excepted from avoidance under § 522(f).

III

Accordingly, for the foregoing reasons, the bankruptcy court's Order of May 22, 2014, [Bankr. R. 48], and its Order denying First National's Motion to Alter, Amend, or Vacate, entered July 29, 2014, [Bankr. R. 54], are hereby **AFFIRMED**.

A separate Judgment consistent with this Order is entered concurrently herewith.

This the 21st day of August, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge